# Seiter's Estate.

*Will—Probate—Loose pieces of paper—Signature at end thereof —Acts of April 8, 1833, P. L. 249, and June 7, 1917, P. L. 425.*

1. Under the Act of June 7, 1917, P. L. 409, no questions of the revocation or cancellation of a will can arise, unless it is shown that a perfect will was in existence upon which such question might be founded. Under the Act of June 7, 1917, P. L. 409, that which was once a perfect will must remain such, unless repealed, altered or destroyed in one of the ways designated by the act; a mere direction to destroy, however express, can never amount to a revocation, unless it should be followed by burning, cancelling, obliterating or destroying the will.

2. A will may be made on separate piece of paper, but when so made they must be connected by their internal sense, by coherence or adaptation of parts, to constitute a will. The order of connection must appear upon the face of the will, it cannot be established by extrinsic evidence; and it must be a will executed as directed by the act of assembly.

3. Testator gave to his niece an envelope, saying that it was his will, and that if he died not having asked for it, she should take it to a lawyer. She placed it in a cupboard, where it remained until shortly before testator's death. Two days after he died she took it to a lawyer. The envelope was unsealed. Inside was another envelope which was sealed, and on which was endorsed the statement that it was testator's will. This contained four loose and detached papers, having the appearance of having been cut from a will previously made; one of the papers was in form an introduction to a will, another was numbered eight and contained testamentary directions, a third was an attestation clause in usual form and the fourth had the testator's name written thereon, with names of two other persons. One of these persons admitted that the signature was his; the other person could not be found. There was no evidence that a complete will was in existence prior to the time the envelope was given to the niece. Nor was there any evidence to show that the loose papers were taken from such will or that they were part of a will signed by testator. There was nothing in any one of the papers that referred to a matter or thing in the others. *Held*, (1) that as there was no evidence that a perfect will had been in existence, no question of cancellation arose; (2) that the delivery of the papers to the niece with the accompanying declaration did not establish a legal will; (3) that the loose, disconnected, and

unrelated papers did not meet the test required by the probate act; (4) that no one of the papers of testamentary character was signed at the end thereof as required by the Act of April 8, 1833, P. L. 49; and (5) that probate was properly refused.

Argued April 28, 1919. Appeal, No. 76, Jan. T., 1919, by Elizabeth Schaff, from decree of O. C. Erie Co., Feb. T., 1918, No. 76, sustaining decision of register of wills refusing to admit to probate the alleged will of John H. Seiter. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Appeal from decision of register of wills. Before WHITTELSEY, J.

The four pieces of paper alleged to constitute the will of the deceased were in the following form:

Paragraph on one page:

"I, John Seiter, of 311 French Street, in the City of Erie, County of Erie and State of Pennsylvania, being of sound and disposing mind, memory and understanding, do make, publish and declare the following to be my last will and testament, hereby revoking all former wills by me at any time heretofore made.

"First. I direct that all my just debts and funeral expenses be paid as soon as may be after my decease."

Paragraph on another page:

"Eighth. As to the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath the same to my hereinafter named executors, in trust to sell and dispose of the same at public or private sale and to the best advantage and to divide the proceeds thereof between my niece, Marie Seiter, of Olean, New York, and my deceased wife's niece, Elizabeth Schaff, Erie, Pennsylvania, share and share alike. My said real estate is to be sold and converted by my said executors within a reasonable time after my decease."

Paragraph on another page:

"Signed, sealed, published and declared by the above named John Seiter, as and for his last will and testament

in the presence of us, who at his request and in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses hereto.

　　　　　　　　　　　　　"JOHN SEITER (Seal)

"John R. Haughney, 519 Myrtle St.

"Adelaïde Markley, St. Vincent's Hospital."

　Paragraph on another page:

　Endorsed on the back of the envelope.

　　　　　　　　　　"Will of

　　　　　　　　　"John Seiter

　　　　　　　"Dated January 29, 1915.

　　　　　　　　"Law Office of

　　　　　　　　"J. R. Haughney,

　　　　　　　"604-605 Masonic Temple,

　　　　　　　　　"Erie, Pa."

The court sustained the decision of the register. Elizabeth Schaff appealed.

*Error assigned* was the decree of the court.

*L. E. Torry,* for appellant.—The plan adopted by the decedent to change his will, cancelling part of it and leaving the remainder to carry a disposition of his property, which left the will in sections, not physically connected, did not destroy the remainder of the writing from being entitled to probate, inasmuch as the remaining parts are connected by their internal sense and by a coherence and adaptation of parts: Evans App., 58 Pa. 238; Wikoff's App., 15 Pa. 281; Maslin v. Hainlin's Exr., 53 Am. Dec. 673; Ramsey's Will, 2 D. R. 425; Swire's Est., 225 Pa. 188; Pomeroy's Est., 19 Dist. 441; Heise v. Heise, 31 Pa. 246.

*John R. Haughney,* for appellee.—An instrument which is not signed as required by the Act of April 8, 1833, Section 6, cannot be given effect as a will: Wineland's App., 118 Pa. 37.

OPINION BY MR. JUSTICE KEPHART, June 21, 1919:

This is an appeal from a decree made in a proceeding under Section 19 of the Act of June 7, 1917, P. L. 409. The register of wills certified to the court below that the four pieces of paper, not physically connected and only one of which was signed, offered for probate as the last will and testament of John H. Seiter, presented a disputable and difficult question, which the court was asked to determine. A caveat had been filed against the probate of the will. The court, after hearing testimony, decided the papers did not constitute a will, and decreed that they should not be admitted to probate.

John H. Seiter, a year and a half before his death, gave to the niece of his deceased wife an envelope, saying: "Here, Lizzie, is my will; you keep this will until I ask you for it. If I don't ask you for it you keep it until I am dead and then take it to a lawyer and have him read it to you." On the bottom of the envelope was written: "J. R. Haughney, Attorney at Law, 604 Masonic Temple, Erie, Penna." This envelope was unsealed. Inside of it was another envelope, sealed, upon which were endorsed these words: "Will of John Seiter, dated January 29, 1915, Law office of J. R. Haughney, 604 Masonic Temple, Erie, Pa." Mrs. Schaff took the envelope to her home, put it in a cupboard, where it remained until shortly before Seiter's death. Two days after his death, she, in company with two others, took the envelope to a member of the bar, who opened both envelopes, and found inside the inner envelope four pieces of paper, hereinafter referred to. One of the persons, claimed to have been a subscribing witness, admitted that the signature on one of the papers was his; the other person whose name appeared thereon could not be found. It was stated that sections or paragraphs had been cut from a complete will by the testator, who adopted this means of cancelling the sections or paragraphs thus cut out. There is no evidence that a complete will was in existence prior to the time the four papers were

given to the decedent's niece; nor is there anything before the court, to show that the parts in question were taken from such will, or that the papers handed to the appellant were a part of a will that had been duly signed by the testator.  Under the 13th section of the Act of 1833, reënacted by the Act of June 7, 1917, P. L. 409, that which was once a perfect will must remain such, unless repealed, altered or destroyed in one of the ways designated by the act; and a mere direction to destroy, however express, can never amount to a revocation, unless it should be followed by burning, cancelling, obliterating or destroying; otherwise the great object of the act of assembly, which was to prevent parol revocation, would be entirely lost: Clingan v. Mitcheltree, 31 Pa. 25; Heise v. Heise, 31 Pa. 246; Dixon's App., 55 Pa. 424; Jones's Est., 211 Pa. 364, 368.  Therefore, before the question of revocation or cancellation can come up, it must appear that a perfect will was in existence upon which such question might be founded.

The delivery of the papers by John Seiter, accompanied with the declaration that it was his will, did not establish a legal will, entitled to probate; and appellant's second contention is equally untenable.  It was that, though the parts were physically disconnected, they were connected by their internal sense, their coherence and adaptation of parts; and a will thus predicated must be considered a lawful will.  We do not deny that a will may be made on separate pieces of paper, but when so made, they must be "connected by their internal sense, by coherence or adaptation of parts," to constitute a will: Wikoff's App., 15 Pa. 281-290.  A will may adopt an existing paper by reference thereof: Baker's App., 107 Pa. 381-391; but it must be so identified by the instrument as not to admit of a contrary conclusion.  The order of connection must appear upon the face of the will.  It cannot be established by extrinsic evidence: Baker's App., supra; and it must be a will executed as directed by the act of assembly.

There is nothing in any one of the papers, that refers to a matter or thing in the others; nor is there anything by reference, history or recital that would have a tendency to connect the papers; nor is there anything of itself that would support the conclusion that all the papers were intended as a last will and testament. No marks identifying the papers one with the other are present and the one containing a disposition of property might well be placed in any will and be in entire harmony with it. Each paper standing alone contains an independent, completed thought, meaningless as a will, but as one might physically connect the separated parts, a semblance of a will appears; and to the same scheme might be added paragraphs, or paragraphs might be taken therefrom, and the security lodged in the single piece of paper as a will, or the logically connected pieces of paper as a will, is lost. There must be something in all the papers in addition to such physical connection to make a last will. It must spring from the papers themselves and each be shown, either by their relation, recital, reference, natural sequence or continuity of sense, in a word, internal sense, to be part and parcel of a whole. As such they should be susceptible of certain identification. The reference must be complete in the papers themselves. We must, moreover, assume that the separate writings before the court were the same parts delivered to appellant, that while it rested in the cupboard no one interfered with it, and on its way to the attorney it was not tampered with. It requires no elaboration to show how easily it would be to distort a will under these circumstances.

The appellant failed to sustain her contention, because the papers did not of themselves meet the required test. Here we have four separate, loose, disconnected slips of paper. One of them has the testator's name written thereon, with the names of two other persons, nothing more. It is proposed to attach this to a second paper, the attestation clause, and that to a third paper headed "eighth," and that to a fourth introductory paper. No

other information from the papers themselves that they were intended to be connected as a will. If we should sustain such efforts, it would open wide the door to fraud. Any evil-minded person might, with comparative ease, take a will and, by cutting from it sections or paragraphs, entirely defeat the object of the testator.

None of the papers of testamentary character was signed at the end thereof. The 6th Section of the Act of April 8, 1833, P. L. 249, expressly states how a will must be signed. See Stinson's Est., 228 Pa. 475. Loose pieces of paper were there unsigned and the name of the testator appeared on a single piece of paper. This is not signing "at the end thereof" as contemplated by the act. See Wineland's App., 118 Pa. 37, for a further discussion of this question.

The decree of the court below is affirmed at the cost of the appellant.