## Davis' Estate.

Argued April 21, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*C. Russell Phillips,* with him *Montgomery, Mc-Cracken, Walker & Rhoads,* for appellant.

*Mercer L. Lewis,* for appellees.

OPINION BY MR. JUSTICE PARKER, May 11, 1942:

This is an appeal from a decree of the court below affirming the action of a register of wills in refusing probate to two certain writings as the last will of James N. Davis, deceased. The decree must be affirmed.

James N. Davis died December 11, 1938, a resident of Philadelphia, leaving $8,320 on deposit in the Philadelphia Saving Fund Society, and the premises in which he lived. Four days previous to his death, while ill in bed, Davis sent for Martha Bowling who kept house for Mary Hill, and in response Martha went to the Davis home. Mary Hill was a friend of Davis and was always referred to by him as Sister Mary. Davis there stated to Martha that he was going to the hospital and then sat down at a dresser and wrote this letter: "Phila., Pa. Dear sister Marry I want you take care of my bank Book if I die turn it over to James N. Davis 2204 Ingersoll S." He then took from the dresser a card on which he had written in his own handwriting: "Thelmer Moore 113 Second St New Rochell New York". The obverse of the card had on it in printing: "REV. J. C. HARRIS Distributor for Laly Mineral Compound The Tonic for Constipation, Indigestion and many other ailments 1861 Judson St. Philadelphia, Pa."

He placed a bank book showing deposits in Philadelphia Saving Fund Society in the fold of the letter "and the card up on it and put rubber bands around it." He then placed the whole package in a large book of a religious nature and handed it to Martha saying: "Turn my bank book over to Sister Mary and if I should die I

want Thelma Moore to get my money in the bank." Those facts are supported alone by the testimony of Martha Bowling. Thelma was a favorite second cousin of Davis living in New York and was unknown to Mary and Martha. The package was in due course delivered to Mary and, after the death of Davis, to Thelma who offered the papers for probate.

A will may be written on several detached or loose sheets of paper and the papers will be given effect as a last will "if they can be coherently read as a will, that is, contain nothing incongruous or out of harmony in the general conception as a will, or if the several parts suit, fit in and are adapted as a will . . . provided the several pages be connected by their internal sense": *Maginn's Est.*, 278 Pa. 89, 93, 122 A. 264. As expressed by Chief Justice GIBSON in *Wikoff's Appeal,* 15 Pa. 281, 290, separate pages to be sustained as a will must be "connected by their internal sense, by coherence or adaptation of parts."

In *Seiter's Est.*, 265 Pa. 202, 108 A. 614, four pieces of paper were inclosed in a sealed envelope marked "Will of John Seiter". This formed a closer connection between the papers than the placing of a rubber band about a deposit book, a letter and a card. We affirmed a refusal to probate the papers as the last will of the decedent and there said (p. 207) : "There must be something in all the papers in addition to such physical connection to make a last will. It must spring from the papers themselves and each be shown, either by their relation, recital, reference, natural sequence or continuity of sense, in a word, internal sense, to be a part and parcel of the whole. As such they should be susceptible of certain identification. *The reference must be complete in the papers themselves* [Italics supplied]."

The letter and card offered here are not connected or correlated in their internal sense. The only completed thought in the letter is a request that the bank book be placed in the care of Sister Mary and the card expresses

no thought, with the result that there cannot be and is not any connection between the two. There is nothing in either letter or card that refers to any matter or thing in the other. The name of Reverend Harris printed on the card would supply the same deficiency in the letter as would the name of Thelma Moore. There is no identification of the card showing that it is any part of a will. Any scrap of paper upon which decedent had written a name and address would disclose the same connection of sense with the letter as would the name of Thelma Moore, if attention is confined to the papers.

If such papers as are offered here could be held to constitute a will the statutory requirement governing the execution of wills would cease to be of any force and unlimited opportunity for fraud would be afforded. It is not necessary to enlarge upon the subject to show how readily a will could be changed by designing persons if unidentified and unrelated writings on scraps of paper could be gathered together to form a last will.

The conclusion reached here is in harmony with that arrived at in *Baker's Est.,* 331 Pa. 33, 200 A. 65. There a testator crossed out with lines a provision in a will and pinned to that paper another paper. The paper attached was undated and unsigned although in the handwriting of the decedent. We held that the attached and unsigned paper could not be construed to be a codicil to the will. Also see *Bryen's Est.,* 328 Pa. 122, 195 A. 17.

*Fosselman v. Elder,* 98 Pa. 159, relied upon by appellant is not at variance with our conclusion in this case. There is a marked difference in the fundamental facts in the two cases. There a letter was inclosed in a sealed envelope addressed in the handwriting of the testatrix to the one claiming an interest in her estate by virtue of the letter. The physical connection betwen the parts was closer than if the two had been bound by a staple and there was less opportunity for a fraudulent substitution. The parts were in a normal sequence and there was a correlation and connection in the sense that is not found here.

In view of the result reached the questions raised as to who are the next of kin and heirs of the decedent are matters for consideration on the distribution of the estate that do not interfere with a present disposition of the controversy as to the probate of the papers presented.

The decree of the court below is affirmed, costs to be paid from the estate of the decedent.