## Schell Estate

*Kendall D'Andrade*, for executors.

TAXIS, P. J., January 21, 1960.—Herman S. Schell, decedent, died testate on September 10, 1959, leaving a will dated February 1, 1941, a codicil dated October 20, 1951, and a second codicil dated August 10, 1957.

Lillie D. Schell, the widow and surviving spouse, and Harold W. Schell, a son, were named executors in these testamentary writings. These executors presented a petition to the Register of Wills of Montgomery County, alleging that the codicil dated August 10, 1957, contained statements which are libelous in character and requested the register of wills to probate the will and codicils with the libelous paragraph deleted.

On October 13, 1959, the register of wills entered an order stating that: ". . . disputable and difficult questions being raised on whether part of the second codicil is libelous and whether the second codicil may be probated with a part thereof deleted, the aforesaid record is hereby certified to the Orphans' Court of Montgomery County, Pennsylvania, under the Act of 1951, P. L. 638, Art. 2, Sec. 207."

The issue raised is a novel and interesting one, namely, whether the register of wills has the power to probate testamentary writings deleting therefrom paragraphs libelous in nature or whether the register of wills must probate the testamentary writings fully and completely.

After careful consideration of the petition this court on November 27, 1959, ordered and decreed that the register of wills probate the will in deleted form, omitting therefrom that which may be libelous or scandalous, and directed that the original be impounded and that the said original could be examined only upon further order of the court. In order to avoid delay in the administration of this estate it was deemed expedient to enter the foregoing order and to hand down this opinion at a subsequent date reflecting the views of the court supporting this decree.

Initially it must be observed that, having carefully examined the alleged libelous statements referred to by petitioner, it is my opinion that these statements would clearly form the basis for an action of libel by the defamed party against testator's estate. These statements are presumptively libelous and clearly not dispositive.

Secondly, it is most probable that an action for testamentary libel would not fall within the exclusions enumerated in the survival act, Fiduciaries Act of April 18, 1949, P. L. 512, sec. 601, 20 PS §320.601, which provides:

"All causes of action or proceedings, real or personal, *except actions for slander or libel,* shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." (Italics supplied.)

In Nagle v. Nagle, 16 D. & C. 346, affirmed 316 Pa. 507, the court reasoned that a testamentary attack was not in a strict sense libel as the term is used in the statute. The court reasoned that the testamentary type of libel action could not be brought in the wrongdoer's lifetime and, further, that this type of libel does not grow out of temporary excitement but rather is deliberate and is made part of a public record. The court therefore concluded that the statutory reference

to libel merely referred to actions which arose prior to testator's death. Although the court in the Nagle case was reviewing the language of the predecessor to the current statute, the similarities of language in the two statutes make the reasoning of this case applicable to the present statute.[1]

In the early case of Gallagher's Estate, 10 Dist. R. 733, the lower court established the right of the injured party to recover on a claim of testamentary libel. However, although research of the Pennsylvania cases discloses no expression, either appellate or lower court, regarding the power of the register of wills or the orphans' court to excise libelous statements from the probate of a will, the subject has been sensibly and thoroughly treated in several New York Surrogate's opinions.[2]

In Draske's Will, 290 N. Y. S. 581, the court concluded that it did possess power to exclude from probate the presumptively libelous portions of a will where the excision did not affect the dispositive portions of the will. The court, at page 589, justified its intervention with the following analysis:

"It follows as a logical sequence that a testator, as a purely legal matter, possessses no basic right to require from the administrators of the law the recognition or perpetuation of any expression of wish or feeling which is not directly relevant to an affirmative disposition of a portion of the assets belonging to him. This statement, of course, includes the persons by whom he desires his estate to be administered, and the rules which are to guide their conduct. The inclu-

---

[1] For similar prognostications of the court's interpretation of the present statute's application to testamentary libel see 97 U. of P. Law Rev. 289 and 22 Temple L. Qu. 466.

[2] See annotations discussing other jurisdictions' approach to the problem in 34 L. R. A 975, 49 L. R. A. 898, and also In Re Croker's Will, 105 N. Y. S. 2d 190.

sion in the will of anything in excess of such directions is pure surplusage possessing no claim to judicial protection or perpetuation.

"The fact that the insertion of superfluous language is in most instances innocuous cannot alter the basic principle that the only inherent legal right of the testator is, in so far as not restricted by positive rules of law, merely to make bald and categorical directions respecting the administration and affirmative disposal of his property."

Although there are no Pennsylvania appellate expressions relating to the duties of the register of wills with regard to probate of libelous statements, the Supreme Court in Rockett Will, 348 Pa. 445, affirming the court below, established clearly the discretionary nature of the register's probate duties. In that case the register had admitted to probate a will which contained marginal notations purporting to void the adjacent paragraph in the body of the will. As a result it was unclear whether or not the register considered the particular paragraph involved as being revoked by the marginal notation. Accordingly the court remanded the will to the register of wills for a clarifying decision with the following commentary on the powers of the register:

"In Hegarty's Appeal, 75 Pa. 503, it was said by Mr. Justice Sharswood (pp. 514-515): 'Accordingly, nothing is better settled in England than that the ordinary or ecclesiastical court has exclusive jurisdiction of the question, whether any particular clause is really a part of the will of the testator . . . We may assume that where the contest is, whether a particular clause really forms a part of the will of the testator . . . it is in the power of the register to grant probate of the rest of the paper without such clause as forming in truth no part of the will.' cf. Dixon's Appeal, 55 Pa. 424; Seiter's Estate, 265 Pa. 202, 108 A. 614; Baker's

Estate, 331 Pa. 33, 200 A. 65; Rosenthal's Estate, 339 Pa. 489, 15 A. 2d 370; Davis' Estate, 344 Pa. 520, 26 A. 2d 339."

Rockett Will, supra, clearly defines the power and duty of the register of wills to excise from the probate of a particular document submitted to him any contradictory provisions of a will which in fact do not form a part of the will. The function of probate is by no means merely a mechanical one, but rather requires the exercise of informed discretion. In Rockett Will this function required the register of wills to determine from the document before him which provision was void, and, by his decree of probate, to declare which portion of the document was in fact the last will of decedent. Similarly, in the case at hand the register of wills must exercise the discretion vested in her. The law does not require the mechanical probate of the presumptively libelous portions of the document submitted where, as here, these presumptively libelous statements had no bearing on the dispositive provisions of the will.

The lower court decision in Rockett's Estate, 48 D. & C. 6, in enumerating the duties of a register of wills, set forth the foregoing as the procedure applicable when dealing with unattested obliterations, alterations or interlineations, a procedure which is equally adaptable to the presumptively libelous wills situation. The court, at page 16, referred to the system described in 1 Williams On Executors (11 Ed.) p. 234, which provided: "Where alterations are satisfactorily shown to have been made before the execution, it is usual to engross the probate copy of the Will *fair*, inserting the words interlined in their proper places, and omitting words struck through or obliterated. But in cases where the construction of the Will may be affected by the appearance of the original paper, the Court will order the probate to pass in *fac simile*."

In the present situation it is the duty of the register of wills to probate the will *fair*, omitting the presumptively libelous provisions from the probate record. It is for these reasons, therefore, that the court has ordered the register of wills to probate the will in deleted form and to impound the original which may be examined only by further order of the court.